IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ROBIN L. THORNTON,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: CV506-042

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge J. Richard Stables ("ALJ Stables" or "the ALJ") denying her claim for Disability Insurance Benefits and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on January 16, 2004, alleging that she became disabled on January 1, 1978 due to encephalitis, epileptic seizures, and a chemical imbalance. (Tr. at 50, 67). After her claims were denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. (Tr. at 13, 27). On October 13, 2005, ALJ Stables held a hearing at which Plaintiff appeared and testified. (Tr. at 13). Arthur Schmitt, a vocational

expert, also testified at the hearing. (Id.). ALJ Stables found that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). (Id.). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 4).

Plaintiff, born on May 29, 1962, was forty-three (43) years old when ALJ Stables issued his decision. (Tr. at 13). She has a high school education. (Id.). Her past work experience includes employment as a cashier, sewing machine operator, waitress, and cook. (Id.).

## ALJ's FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987). The first step determines whether the claimant is engaged in a "substantial gainful activity." Yuckert, 482 U.S. at 140, 107 S. Ct. at 2287. If the claimant is engaged in a substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-141, 107 S. Ct. at 2291. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If

2

the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141, 107 S. Ct. at 2291. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine whether the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142, 107 S. Ct. at 2291.

In the instant case, the ALJ followed this sequential process to determine that, after the alleged onset date, there was no evidence that Plaintiff engaged in substantial gainful activity. (Tr. at 14). At step two, the ALJ found that Plaintiff has epicondylitis, cervical neuralgia, bronchitis, gastroesophageal reflux disease, major depressive disorder, and adjustment disorder. (Tr. at 16). However, the ALJ found that these impairments were all properly considered non-severe under the Act. (Id.). Additionally, the ALJ determined that Plaintiff has seizure disorder, fibromyalgia-polymyalgia-arthralgia, and chronic obstructive pulmonary disease, all impairments that are considered "severe" within the Act. (Id.). However, the ALJ concluded that Plaintiff's medically determinable impairments did not meet or medically equal, either singly or in combination, a listed impairment. (Id.). At the next step, the ALJ found that Plaintiff retained the residual functional capacity to perform light work activity with no climbing ladders, unprotected heights, moving machinery, or frequent exposure to chemicals, dust, fumes, and smoke. (Tr. at 17). Finally, ALJ Stables concluded that, based on

3

Plaintiff's residual functional capacity, age, education, and past relevant work experience, there are a significant number of jobs existing in the national economy that she can perform. (Tr. at 19). Accordingly, ALJ Stables determined that Plaintiff was not disabled within the meaning of the Act. (Id.).

## **STANDARD OF REVIEW**

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

4

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff contends that the ALJ erred in finding that her mental impairment was not severe. (Doc. No. 21, p. 9). Plaintiff alleges that the ALJ improperly discounted the opinions of Plaintiff's treating physicians and improperly evaluated the testimony of lay witnesses. (Id. at 10-11). Defendant, however, asserts that substantial evidence supports the ALJ's determination that Plaintiff's mental conditions are not severe. (Doc. No. 22, p. 6).

A treating physician's opinion is entitled to be given substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F.2d at 583. When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

Plaintiff specifically asserts that the ALJ improperly discounted the opinions of counselors and psychiatrists at Satilla Mental Health, along with the opinions of two physicians at other facilities. First, she contends that her medical records from Satilla Mental Health "show [ ] GAF (Global Assessment of Functioning) levels that range from 35, to a one-time high of 52." (Doc. No. 21, p. 9). Indeed, Plaintiff's medical records

5

evidence two GAF scores recorded by a medical source, Dr. Lionel Bryan, a psychiatrist at Satilla Mental Health: a GAF of 25 on August 25, 2004 (Tr. at 248) and a GAF of 52 on January 12, 2005 (Tr. at 323). The ALJ also noted that Dr. Enrique Fernandez, a neurologist, diagnosed Plaintiff with depression during an examination in 2003, and that she was treated for mood disorder at McKinney Community Health Center. (Tr. at 15).

Addressing the evidence pertaining to Plaintiff's mental health, however, the ALJ found that:

> The evidence further shows that claimant has major depressive disorder and adjustment disorder. Recent GAF rating of 25 (Ex. 6F/13A) does not make claimant's mental impairments severe because records from Satilla Mental Health (Ex. 6F) do not show sustained or repetitive or long term GAF scores in a low range or other evidence that these disorders have satisfied the 12-month durational requirement.

(Tr. at 16). Thus, the ALJ correctly considered evidence of Plaintiff's mental impairments, including the GAF levels recorded by Satilla Mental Health, but found that the low score did not satisfy the twelve-month durational requirement of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Additionally, while other personnel at Satilla Mental Health recorded GAF levels in Plaintiff between 35 and 45,[1] none of these scores were provided by an "acceptable medical source" as defined by the regulations. 20 C.F.R. §§ 404.1513(a)(1), (2), 416.913(a)(1), (2). Thus, any contention that the ALJ erred in not specifically

---

[1] Plaintiff's records from Satilla Mental Health indicate that:
On July 23, 2004, Charlotte Hanchey, MHP/MRP, recorded a GAF score of 40 (Tr. at 234);
On August 3, 2004, Lorene Regulus, MHP/MRP/SA, recorded a GAF score of 40 (Tr. at 236);
On August 13, 2004, Charlotte Hanchey, MHP/MRP, recorded a GAF score of 40 (Tr. at 239);
On September 10, 2004, Amanda Murray, unlicensed, recorded a GAF score of 35 (Tr. at 262);
On September 15, 2004, Amanda Murray, unlicensed, recorded a GAF score of 40 (Tr. at 265);
On October 20, 2004, Amanda Murray, unlicensed, recorded a GAF score of 45 (Tr. at 291);
On August 16, 2005, Stephonie Goddard, MHP/MRP, recorded a GAF score of 40 (Tr. at 467).

addressing and discounting any of these assessments is without merit, as these medical opinions are not those of treating physicians.

Finally, the ALJ found that the alleged severity of Plaintiff's mental impairments was belied by other evidence of record, specifically her behavior and activities of daily living:

> [C]laimant failed to keep many of her appointments at Satilla Mental Health (6F/3), which suggests either non-compliance or non-severity. Moreover, claimant's daily activities and her sustained work at a convenience store demonstrate[ ] mental functioning in the normal range and adequate ability to perform in a work environment despite her mental impairments. Therefore, the totality of the evidence fails to prove that claimant's mental impairments cause significant functional limitations.

(Tr. at 16).

Plaintiff asserts that the ALJ mischaracterized her activities of daily living, urging that she "did not actually 'work' at Country Boys Convenience Store" and that the ALJ improperly disregarded the testimony of her coworkers that she is "not mentally or physically able to work with them." (Doc. No. 21, p. 11). Indeed, Plaintiff's sister Lynn Reddish executed a statement, signed by two other co-workers, in which she asserts that "Robin is not employed by Country Boys" and "is not mentally or physically able to work with us" and that instead Plaintiff "stay[s] up at the store because she has no air condition[ing] or heating in her house & because of me. Robin helps me & Linda Holloway (her cousin that works with us) take out empty boxes & maybe bag some ice for the machine. Sometimes she'll put up a few drinks in the cooler also." (Tr. at 487).

The Eleventh Circuit does not require an explicit finding as to credibility, but the implication must be obvious to the reviewing court. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Although the ALJ in the instant case made no specific finding as

7

to the credibility of the sister's statement, in light of the ALJ's ultimate finding of no disability, the implication is obvious that the ALJ did not find her assertions to be credible. Indeed, as Respondent notes, the co-workers' claims are in direct contradiction to Plaintiff's own testimony at her hearing before the ALJ:

> Q: When was the last day that you did any kind of work?
> A: The public like, public work? Drawing a check?
> Q: Work for pay.
> A: For pay.
> Q: Any kind of work for pay. Was it back in January of last year?
> A: No. It was, I was, I helped my sister up at the store where she works at and I carried some trash and boxes out to the dump.
> Q: So when did you last do that, were you paid for helping your sister?
> A: Yes.
> Q: When did you last work doing that?
> A: Yesterday.
> Q: Okay. So you still helping, still working with your sister?
> A: Yes, sir.
> Q: And what, what kind of work do you do for your sister?
> A: It's at a convenience store and she works for the place and I help the cashiers that are up there 'cause they don't have time enough to take the trash out. And so she let me, to help me get my light bill and all paid up to-
> Q: So you work as a cashier then?
> A: No. I don't run the register or anything. I just take out the trash, clean the restroom, and help you know when they put up stuff and all and take care of the boxes and all that.
> Q: Okay, you stock the shelves?
> A: No. The other cashier does that. I put, sometimes I'll put the price with the little pricing down on top of the stuff and then they'll put up.
> Q: Put the price sticker on the merchandise?
> A: Yes, sir.
> Q: How many hours a week do you work?
> A: It's supposed to be a couple hours a night.
> Q: How much?
> A: Two hours a night.
> Q: How many nights a week?
> A: Seven.
> Q: So you work about 14 hours every week?
> A: Yes, sir.

AO 72A
(Rev. 8/82)

(Tr. at 498-499). Though the ALJ of course did not find that the convenience store work rose to the level of "substantial gainful activity," he did find that her ability to perform in a work environment in such a way evidences that her mental impairment was not severe under the Act. Accordingly, ALJ Stables' determination that Plaintiff's mental impairments were not severe at step two and his subsequent finding of no disability is clearly supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 5th day of June, 2007.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)